

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00076-CR

_____

JESSE LUCAS WILSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 173rd District Court
Henderson County, Texas
Trial Court No. CR16-0937-173

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

MEMORANDUM OPINION

A Henderson County jury convicted Jesse Lucas Wilson of two counts of aggravated sexual assault of a child younger than fourteen.[1]  *See* TEX. PENAL CODE ANN. § 21.02.  Wilson was sentenced to thirty-three years' imprisonment and was ordered to pay $900.00 in attorney fees for his court-appointed counsel in two separate judgments, one for each count.

On appeal, Wilson argues that his counsel rendered ineffective assistance during guilt/innocence by refusing to allow him to testify and by failing to present allegedly exculpatory evidence.  In his point of error, Wilson contends that the trial court abused its discretion by overruling his challenges to two veniremembers for cause.  We find that the trial court did not abuse its discretion in overruling Wilson's motion for new trial based on ineffective assistance of counsel and that Wilson failed to preserve his last point of error.  That said, because Wilson is indigent, we modify the trial court's judgments by deleting the assessment of court-appointed attorney fees.  As modified, we affirm the trial court's judgments.

## I.     The Trial Court Did Not Abuse Its Discretion in Overruling Wilson's Motion for New Trial Based on Ineffective Assistance of Counsel

Wilson filed a motion for new trial arguing that his counsel rendered ineffective assistance during guilt/innocence by (1) refusing to allow him to testify in his defense and (2) by failing to present exculpatory witnesses.  Wilson's motion for new trial was accompanied by his affidavit stating, "It was my wish to testify in my trial.  I repeated my wish to testify over and over, but my

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001.  We follow the precedent of the Twelfth Court of Appeals in deciding this case.  *See* TEX. R. APP. P. 41.3.

attorney would not agree to call me to testify and ended up not putting on any defense at all." The affidavit did not detail the allegedly exculpatory evidence he wished to present, but merely characterized it as "evidence regarding the circumstance of the offense and living arrangements at the time of the alleged offense." The trial court denied Wilson's motion for new trial without a hearing.[2]

## A.    Standard of Review

When, as here, "the trial court denies a motion for a new trial alleging ineffective assistance of counsel, 'we view the relevant legal standards through the prism of abuse of discretion.'" *Lampkin v. State*, 470 S.W.3d 876, 903 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Ramirez v. State*, 301 S.W.3d 410, 415 (Tex. App.—Austin 2009, no pet.)). As a result, we use the standard set by *Riley v. State*:

> An appellate court reviews a trial court's denial of a motion for new trial for an abuse of discretion, reversing only if the trial judge's opinion was clearly erroneous and arbitrary. A trial court abuses its discretion if no reasonable view of the record could support the trial court's ruling. This deferential review requires the appellate court to view the evidence in the light most favorable to the trial court's ruling. The appellate court must not substitute its own judgment for that of the trial court and must uphold the trial court's ruling if it is within the zone of reasonable disagreement. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."

*Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012) (citations omitted), *overruled on other grounds by Miller v. State*, 548 S.W.3d 497 (Tex. Crim. App. 2018) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985)); *see Burch v. State*, 541 S.W.3d 816, 820 (Tex.

---

[2]Wilson does not complain about the lack of hearing on appeal.

Crim. App. 2017). We must decide whether the trial court erred in determining that Wilson failed to meet his burden to show counsel rendered ineffective assistance.

As many cases have noted, the right to counsel does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). To prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). *See Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009) (orig. proceeding). A failure to make a showing under either prong defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).

The first prong requires a showing "that counsel's performance fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This requirement can be difficult to meet since there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. As a result, the Texas Court of Criminal Appeals has said, "Trial counsel 'should ordinarily be afforded an opportunity to explain his actions before being'" found ineffective. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

When an appellate record is silent on why trial counsel failed to take certain actions, the appellant has "failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable." *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *see Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). This is because allegations of ineffectiveness "must 'be firmly founded in the record.'" *Bone v. State*, 77 S.W.3d 828, 833 n.13

(Tex. Crim. App. 2002) (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). When a party raises an ineffective assistance of counsel claim for the first time on direct appeal, the defendant must show that "under prevailing professional norms," *Strickland*, 466 U.S. at 688, no competent attorney would do what trial counsel did or no competent attorney would fail to do what trial counsel failed to do. *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

### B.    Analysis

"A motion for new trial must be supported by an affidavit that specifically sets out the factual basis for the claim." *Robinson v. State*, 514 S.W.3d 816, 825 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (citing *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009)). When ineffective assistance of counsel is raised in a motion for new trial, "a defendant must allege sufficient facts from which a trial court could reasonably conclude *both* that counsel failed to act as a reasonably competent attorney *and* that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different." *Smith v. State*, 286 S.W.3d 333, 340–41 (Tex. Crim. App. 2009).

Wilson's motion for new trial and his accompanying affidavit did not set forth facts establishing either prong. Wilson's motion was supported only by his own affidavit, which merely said that counsel refused to allow him to testify and that, had he testified, his testimony would include "impeachment evidence, evidence regarding the circumstance of the offense and living arrangements at the time of the alleged offense."[3] The statement in the motion for new trial that

---

[3]"Even though the appellant may file a motion for new trial . . . , [i]f there is no hearing, or if counsel does not appear at the hearing, an affidavit from trial counsel becomes almost vital to the success of an ineffective assistance claim." *Stults v. State*, 23 S.W.3d 198, 208–09 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (citing *Howard v. State*, 894 S.W.2d 104, 107 (Tex. App.—Beaumont 1995, pet. ref'd)). Absent such an affidavit, "[i]t is not our role to

5

counsel "did not put on several defense witnesses who were available to testify as to exculpatory evidence including multiple instances of complainant's recanting, and living arrangements which would have made it impossible" to commit the offense were wholly unsupported by any affidavit. Critically, although Wilson complained of omissions by counsel, the motion and affidavit did not allege facts showing that counsel failed to act as a reasonably competent attorney in making the omissions.

As for counsel's failure to allow Wilson to testify, to establish ineffective assistance of counsel on this ground, it is necessary for appellant to show where in the trial record he asserted his right to testify and that his attorney failed to protect that right. *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *see Agosto v. State*, 288 S.W.3d 113, 117 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The trial court could have found that the trial record did not support Wilson's claim.[4] Alternatively, the court may have decided that there were many reasons why counsel could have been competent in preventing Wilson's testimony after the child victim testified in detail about many acts of sexual abuse. It could have determined that counsel reasonably believed that the evidence Wilson sought to present was not truly exculpatory, that Wilson may have made a poor witness, and that his cross-examination would reveal he had

_____

speculate as to the basis for trial counsel's actions; thus, a record that is silent on the reasoning behind counsel's actions is sufficient to deny relief." *Fulton v. State*, 576 S.W.3d 905, 916 (Tex. App.—Tyler 2019, no pet. h.) (citing *Stults*, 23 S.W.3d at 208; *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003)).

[4]The only mention of Wilson's wish to testify came after the jury's verdict on guilt/innocence. First, in a letter written to the trial court, Wilson said, "[Counsel] argued with me when I said I wanted to take the stand and managed to talk me out of it." In his affidavit accompanying the motion for new trial, Wilson stated, "It was my wish to testify in my trial. I repeated my wish to testify over and over, but my attorney would not agree to call me to testify . . . I never gave up on my wish to testify, but I did finally give up asking." Even if an affidavit supporting a motion for new trial is uncontroverted, "[t]he trial court is free to disbelieve an affidavit, especially one unsupported by live testimony." *Riley*, 378 S.W.3d at 457.

6

engaged in other extraneous offenses and had been accused of sexual assault before by another victim. *See Martinez v. State*, No. 14-01-00674-CR, 2002 WL 1354238, at *3 (Tex. App.—Houston [14th Dist.] June 20, 2002, no pet.) (mem. op., not designated for publication) (concluding counsel did not render ineffective assistance in disallowing defendant's testimony).[5] Thus, the trial court could have determined that Wilson failed to meet the first *Strickland* prong on this claim of ineffective assistance.

As for the second ground of ineffective assistance, Wilson asserted that his counsel should have called the family members and friends that testified at punishment during guilt/innocence.[6] Wilson did not attach an affidavit showing defense counsel's effort, or lack of effort, in investigating their testimony.[7] *Robinson*, 514 S.W.3d at 826. The record revealed that some of these witnesses were under subpoena and were available to testify during guilt/innocence.[8] That

---

[5]Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

[6]These witnesses testified favorably to Wilson at punishment. Although the trial court disallowed testimony on "the weakness and relative strength of the allegations" because it was related to the decided issue of guilt, bills of exception showed that the witnesses questioned the child's motive to lie and the defendant's intent and opportunity to commit the offenses.

[7]Wilson's post-conviction letter showed that Wilson gave counsel "a lot of information to help [his] case," that counsel initially represented that there were witnesses who could testify favorably, but that counsel decided not to call those witnesses. As a result, the trial court could have concluded that counsel's decision not to call the witnesses was a reasonable one made after further research into their backgrounds and purported testimony.

[8]During punishment, Wilson called Dr. Thomas Allen, who was retained to evaluate Wilson's risk of reoffending. Wilson argues on appeal that had Allen "been called to testify, he would have explained his concerns about the weakness of the state's case to the jury, along with all of the information regarding Appellant's designation of being in a low risk category." Nothing shows that any testimony by Allen speculating about the truthfulness of the child victim's allegations or his risk assessment would be relevant or admissible. *See Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993) ("[E]xpert testimony which decides an ultimate fact for the jury, such as 'a direct opinion on the truthfulness of the child,' crosses the line and is not admissible under Rule 702."); *Edwards v. State*, 107 S.W.3d 107, 115 (Tex. App.—Texarkana 2003, pet. ref'd).

said, "there may be many logical and reasonable explanations for not calling certain witnesses, such as a belief that these witnesses would not favorably impress the jury or that they were susceptible to impeachment and therefore presented more potential for harm than help." *Stults*, 23 S.W.3d at 209. Because Wilson did not support his ineffective assistance claim by sufficient facts from which the trial court could have concluded that counsel failed to act as a reasonably competent attorney, we cannot say that the trial court abused its discretion in finding Wilson failed to show that counsel's performance was deficient. *See Anderson v. State*, 193 S.W.3d 34, 39 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (trial court did not abuse its discretion in declining to find counsel deficient for failing to call witnesses where the record did not explain counsel's reasoning for the omissions).

Because the trial court was within its discretion to find that Wilson had not met the first *Strickland* prong, we find no abuse of discretion in the trial court's decision to overrule Wilson's motion for new trial based on ineffective assistance of counsel. As a result, we overrule Wilson's first two points of error.

## II.     Wilson Failed to Preserve His Last Point of Error

During voir dire, Wilson's counsel informed the venire that the State had to prove its case beyond a reasonable doubt and engaged in the following discussion:

> It's such a strong burden that if you have 99 reasons to believe that the person is guilty and one reasonable doubt that they're not, then the law requires the person accused to be found not guilty. Anybody have any opinions on that? . . . .
>
> Anybody here that if they're on the jury that if you had 99 reasons to convict and one reasonable doubt, you'd still convict them after we just talked about that? Anybody that says, you know what? I just can't do that. I've got this one -- I've

8

got these 99 reasons, and they by far weigh out -- outweigh? Anybody that feels that way?

Because they answered affirmatively, two veniremembers, venire number 37 and venire number 42, were the subject of Wilson's challenges for cause. His request was denied.[9] Wilson argues that the trial court's ruling constituted an abuse of discretion.

As explained by the Texas Court of Criminal Appeals,

To preserve error for a trial court's erroneous denial of a challenge for cause, appellant must show that: (1) he asserted a clear and specific challenge for cause; (2) he used a peremptory challenge on the complained-of venire member; (3) his peremptory challenges were exhausted; (4) his request for additional strikes was denied; and (5) an objectionable juror sat on the jury. *Green v. State*, 934 S.W.2d 92, 105 (Tex. Crim. App. 1996).

*Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010).

After his challenges for cause to venire number 37 and venire number 42 were denied, Wilson used and exhausted his peremptory strikes on them and requested another strike for venire number 41, who said her niece was a victim of sexual assault. The trial court denied the request for another peremptory strike. That said, our record shows that an objectionable juror did not sit on the jury. Instead, the record shows that venire number 37, venire number 42, and venire

---

[9]In *Sledge v. State*, counsel asked the venire, "Now, if you have 99 reasons to say somebody is guilty and you have one reasonable doubt, that's not guilty. That's what the law says." *Sledge v. State*, No. 03-03-00092-CR, 2004 WL 438958, at *9 (Tex. App.—Austin Mar. 11, 2004, no pet.) (mem. op., not designated for publication). The Austin Court of Appeals found that the trial court did not abuse its discretion in denying the appellant's challenge for cause to the veniremember who said he "would have to say they're guilty because it's 99 percent." *Id.* at *9–10. Although this unpublished opinion has no precedential value, we note the Court reasoned that "appellant demonstrated only that counsel's hypothetical definition of '99 to 1' was enough to convince [the veniremember] of proof beyond a reasonable doubt," but "[t]he record d[id] not further reflect what [the veniremember's] definition of proof beyond a reasonable doubt might be." *Id.* at *10. In denying the challenges for cause here, the trial court used the same reasoning discussed in *Sledge*.

number 41 were not seated on the jury. As a result, Wilson failed to preserve his last point of error. It is overruled.

### III. We Delete the Assessments of Court-Appointed Attorney Fees

Because the trial court found Wilson indigent, he was presumed to remain indigent absent proof of a material change in his circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p), 26.05(g) (Supp); *Stinecipher v. State*, 438 S.W.3d 155, 165 (Tex. App.—Tyler 2014, no pet.). Even so, the trial court, who also found Wilson indigent after trial, assessed $900.00 in attorney fees against him in two separate judgments, one for each count of aggravated sexual assault.

Under Article 26.05(g) of the Texas Code of Criminal Procedure, a trial court has the authority to order the reimbursement of court-appointed attorney fees only if the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs. TEX. CODE CRIM. PROC. ANN. art. 26.05(g). "[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees" of legal services provided. *Armstrong v. State*, 340 S.W.3d 759, 765–66 (Tex. Crim. App. 2011) (quoting *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)). Since there is no finding of the ability of Wilson to pay them, the assessments of the attorney fees were erroneous. *See Cates v. State*, 402 S.W.3d 250, 252 (Tex. Crim. App. 2013); *see also Mayer v. State*, 309 S.W.3d 552 (Tex. Crim. App. 2010); *Martin v. State*, 405 S.W.3d 944, 946–47 (Tex. App.—Texarkana 2013, no pet.).

10

"Appellate courts 'have the authority to reform judgments and affirm as modified in cases where there is non reversible error.'" *Walker v. State*, 557 S.W.3d 678, 690 (Tex. App.—Texarkana 2018, pet. ref'd) (quoting *Ferguson v. State*, 435 S.W.3d 291, 294 (Tex. App.—Waco 2014, pet. struck) (comprehensively discussing appellate cases that have modified judgments)); *see Stinecipher*, 438 S.W.3d at 166. We modify the trial court's judgments by deleting the assessments of $900.00 for attorney fees from them.

## IV. Conclusion

We modify both of the trial court's judgments by deleting the assessments of $900.00 for attorney fees. We affirm the trial court's judgments, as modified.


Scott E. Stevens
Justice

Date Submitted:     August 29, 2019
Date Decided:       August 30, 2019

Do Not Publish

11